Brandon J. Tittle
Texas Bar No. 24090436
**TITTLE LAW GROUP, PLLC**
5465 Legacy Drive, Ste. 650
Plano, Texas 75024
Telephone: 972.731.2590
Email: btittle@tittlelawgroup.com

**PROPOSED ATTORNEY FOR DEBTOR
AND DEBTOR-IN-POSSESSION**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § § | Case No. 24-41092 |
| LVPR, LLC, | § § § | Chapter 11 (Subchapter V) |
| Debtor. | § | |

**DEBTOR'S EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDER (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL OF EXISTING SECURED LENDERS, (II) GRANTING ADEQUATE PROTECTION FOR USE THEREOF, (III) MODIFYING THE AUTOMATIC STAY TO ALLOW FOR THE RELIEF REQUESTED HEREIN AND (IV) SCHEDULING FINAL HEARING**

LVPR, LLC, the debtor and debtor-in-possession in the above-captioned case (the "Debtor"), hereby moves (the "Motion") this Court for entry of an interim order substantially in the form attached hereto (the "Interim Order") and a final order substantially similar to the Interim Order under sections 105(a), 361, 362, 363 and of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) approving the Debtor's use of Cash Collateral (defined below), (ii) providing adequate protection for, and to the extent of, any diminution in the value of the Cash Collateral, (iii) modifying the automatic stay to the extent necessary to implement and effectuate the terms and provisions of the Interim Order and a subsequent Final Order and (iv) scheduling a final hearing for this Court to consider entry of a Final Order authorizing and

approving the relief requested in this Motion; and (iv) granting related relief as further described herein.  In support of this Motion, the Debtor, by and through its proposed undersigned counsel, respectfully represents:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider the Motion under 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157(b). Venue of this case and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The legal predicates for the relief requested herein are Bankruptcy Code sections 105(a), 363, 1107, and 1108, and Bankruptcy Rules 6003 and 6004.

## RULE 4001 STATEMENT

3. By this Motion, the Debtor seeks authority to use the alleged Cash Collateral (defined herein) of Rapid Finance (the "Rapid") and PayPal ("PayPal," and collectively with Rapid, the "Secured Lenders").  The Debtor seeks to use Cash Collateral as working capital to fund the operation of its business.  As adequate protection for any diminution in value incurred by Secured Lenders through the Debtor's use of Cash Collateral, the Debtor will (i) maintain the value of its business as a going-concern, (ii) provide to Secured Lenders replacement liens on now owned and after-acquired cash derived from Secured Lenders Collateral, and (iii) provide superpriority administrative claims to Secured Lenders equal to any diminution in value of Secured Lenders Collateral.

## BACKGROUND

A.    **General.**

4. On May 7, 2024 (the "Petition Date"), the Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").  The Debtor

**DEBTOR'S EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDER (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL OF EXISTING SECURED LENDER, (II) GRANTING ADEQUATE PROTECTION FOR USE THEREOF, (III) MODIFYING THE AUTOMATIC STAY TO ALLOW FOR THE RELIEF REQUESTED HEREIN AND (IV) SCHEDULING FINAL HEARING--PAGE 2 OF 15**

elected to proceed under subchapter V of chapter 11.

5. The Debtor continues to operate its business and manage its properties as a debtor and debtor-in-possession pursuant to Bankruptcy Code section 1184.

6. As of the date of this filing, a subchapter V trustee has yet to be appointed.

7. Founded in 2016, the Debtor is a boutique, public relations, social media marketing, and creative agency specializing in emerging and established Direct to Consumer ("DTC") brands. The Debtor works in partnership with DTC brands to establish them as challengers in the category through compelling storytelling, and drives sales through marketing campaigns and affiliate strategies.

8. Due to cash flow issues resulting from a drop in revenue in the year 2023, the Debtor is unable meet its monthly debt obligations. Making matters worse, the Debtor is unable to secure additional capital to fund operations. For these reasons, the Debtor was forced to seek protection from this Court.

**B.  Debtor's Loan Agreements with Rapid.**

9. Prior to the Petition Date, Rapid, as lender, and the Debtor, as borrower, entered into, among other documents and agreements, that certain Business Loan and Security Agreement in the amount of $250,000.00 dated May 30, 2023 (the "Rapid Note"). The Rapid Note is allegedly secured by all of the Debtor's real estate, accounts receivables, inventory, instruments, equipment, intangibles, accounts, chattel paper, good will, specific property and all property of the Debtor (the "Rapid Pre-Petition Collateral").

10. As of the Petition Date, the Debtor allegedly owes Rapid approximately $233,369.00 on behalf of the Rapid Note. Rapid filed a UCC-1 Financing Statement against the Debtor regarding the Rapid Note Pre-Petition Collateral. As result, Rapid alleges that pursuant to

the Rapid Note, it has a lien on all assets of the Debtor, including the Debtor's cash (the "Rapid Cash Collateral").

**C.     The Debtor's Loan Agreement with PayPal.**

11.     Prior to the Petition Date, PayPal, as lender, and the Debtor, as borrower, entered into, among other documents and agreements, that certain PayPal Business Loan Agreement dated December 30, 2022 in the amount of $145,000.00 (the "PayPal Note"). The PayPal Note is allegedly secured by all of the Debtor's cash, accounts receivables, inventory, instruments, equipment, intangibles, accounts, chattel paper, specific property and all property of the Debtor (the "PayPal Pre-Petition Collateral").

12.     As of the Petition Date, the Debtor allegedly owes PayPal $35,898.00 on behalf of the PayPal Note. PayPal filed a UCC-1 Financing Statement against the Debtor regarding the PayPal Pre-Petition Collateral. As result, PayPal alleges that pursuant to the PayPal Note, it has a lien on all assets of the Debtor, including the Debtor's cash (the "PayPal Cash Collateral, and collectively with the PayPal Cash Collateral, the "Cash Collateral").

**D.     The Debtor Needs to Use the Secured Lenders' Cash Collateral.**

13.     Though simple when broken down to the basics, the Debtor cannot maintain its existing assets without the use of the Secured Lenders' Cash Collateral. The use of existing cash is required to pay operational expenses. The Debtor needs to be able to pay its employees, rent, and utilities as well as purchase new raw material. Without the Debtor's ability to use Cash Collateral, the Debtor will be forced to shut down operations, which will lead to a complete liquidation of the Debtor's business.

14.     The Debtor's proposed Interim Order requests, among other things including procedural adequate protection requirements, the following salient relief:

a. Maintaining the going concern value of the Collateral by using the Cash Collateral to continue to operate the business and administer this case, including using Cash Collateral to fund working capital expenditures, expenses, payment of authorizations for expenditures, payment of legal and professional fees and for other general corporate expenditures including expenses to protect Secured Lenders collateral;

b. Granting the Secured Lenders post-petition replacement liens pursuant to 11 U.S.C. § 361(2). The Secured Lenders shall be granted a post-petition security interest in and replacement lien (the "Replacement Lien") upon, subject only to prior non-avoidable liens, the Debtor's assets and property of every kind. The Replacement Lien shall serve as adequate protection for the use of the Collateral to the extent of any diminution of the value of the Collateral; and

c. Providing the Secured Lenders a superpriority claim pursuant to 11 U.S.C. § 507(b) in the Debtor's Chapter 11 Case and against the Debtor's bankruptcy estate for the Debtor's use of Cash Collateral to the extent of any diminution in the value of the Debtor's interest in the Collateral and this administrative claim shall have priority over and above all other costs and expenses of the kind specified in, or ordered pursuant to, §503(b) or § 507(a) of the Bankruptcy Code except as provided herein.

d. The above are subject to a carve-out that will be used to fund U.S. Trustee Fees and approved professional expenses.

## RELIEF REQUESTED

15. By this Motion, the Debtor requests (a) entry of an interim order of the Bankruptcy Court (i) approving the Debtor's use of Cash Collateral, (ii) providing adequate protection for, and to the extent of, any diminution in the value of the Cash Collateral, (iii) modifying the automatic stay to the extent necessary to implement and effectuate the terms and provisions of the Interim Order and a subsequent Final Order and (iv) schedule a final hearing for this Court to consider entry of a final order authorizing and approving the relief requested in this Motion.

## BASIS FOR RELIEF

16. Under 11 U.S.C. § 363(c)(2), a debtor may use cash collateral if each entity that has an interest in the cash collateral consents or if the Court, after notice and a hearing, authorizes

the use of the cash collateral. Pursuant to 11 U.S.C. § 363(c)(3), the Court must condition a debtor's use of cash collateral as is necessary to provide adequate protection of the interest in the cash collateral claimed by a party.

17. Section 363(e) further provides that "on request of an entity that has an interest in property . . . to be used, sold or leased, by the trustee, the court . . . shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest." 11 U.S C. § 363(e).

18. Bankruptcy Rule 4001(b) and (d) govern the procedure for consideration of motions to use cash collateral, and both of these subsections provide for expedited consideration of such motions for cases in which immediate interim relief may be crucial to the success of a reorganization. More simply stated, if the ice cream is melting, cash needs to be made available to turn the freezer back on.

19. Although the Bankruptcy Code does not expressly define "adequate protection," Bankruptcy Code section 361 provides a non-exhaustive list of examples of adequate protection including: (i) a lump sum or periodic cash payments; (ii) replacement liens; and (iii) administrative priority claims. See 11 U.S.C. § 361. Generally, courts decide what constitutes adequate protection on a case-by-case basis. *See Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); *see also In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 Collier on Bankruptcy 361.01 [1] at 361-66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding").

20. Courts have consistently recognized that the preservation of the going concern value of secured lenders' collateral constitutes adequate protection of such creditors' interest in the collateral. *See, e.g.*, *In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996) (holding that if there is no actual diminution of value of collateral and the debtor can operate post-petition, then the secured creditor is adequately protected); *In re 499 W. Warren St. Assocs., Ltd. P'ship*, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992) (finding a secured creditor's interest in collateral adequately protected when cash collateral was applied to normal operating and maintenance expenditures on the collateral property); *In re Willowood E. Apartments of Indianapolis II, Ltd.*, 114 B.R. 138, 143 (Bankr. S.D. Ohio 1990) (same); In re Stein, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (creditors' secured position would be enhanced by the continued operation of the debtor's business); *In re Aqua Assocs.*, 124 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in determining whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.") (citation omitted).

21. The debtor bears the burden of proof on the issue of adequate protection, and the party claiming an interest in the cash collateral bears the burden of proof on the issue of the validity, priority, or extent of the lien.

A. **The Use of Cash Collateral is Necessary to Maintain the Debtor's Going Concern Value.**

22. As of the date of filing this Motion, the Debtor does not have sufficient unencumbered cash to fund its business operations and pay present operating expenses. As a result, the Debtor will be unable to meet basic operating expenses without the use of Cash

Collateral. The inability to use Cash Collateral will jeopardize the survival of the Debtor's business.

23. Stated in basic terms, the Debtor has an urgent and immediate need for the use of Cash Collateral pending a final hearing on this Motion. Any lapse in the Debtor's ability to pay operating expenses or its normal bills and expenses as they become due will have a devastating economic impact on the going concern value of the Debtor's business. However, to protect the Secured Lenders for any unreasonable expenditures, the Debtor shall only pay those bills and expenses listed in the Debtor's 13-week cash flow budget, a copy of which is attached hereto as **Exhibit A**.

24. If the Debtor is not allowed to continue paying its expenses and operate its assets, such assets will decline in value (or disappear) and will generate no revenue to pay creditors. *In re Las Vegas Monorail Co.*, 429 B.R. 317, 341-42 (Bankr. D. NV 2010) (the debtor's "use of the cash it generates in its operations is itself a form of adequate protection"); *In re 499 W. Warren Street Assocs., Ltd. P'ship*, 142 B.R. 53, 58 (Bankr. N.D.N.Y. 1992) (allowing the use of cash collateral to maintain property); *In re Constable Plaza Associates*, 125 Bankr. 98, 105 (Bankr. S.D.N.Y. 1991) ("debtor's plowing back rents solely for the purpose of maintaining and operating its office building will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the] mortgage").

25. Accordingly, the use of Cash Collateral will allow the Debtor to continue its operations, preserve the Secured Creditors' collateral and protect the Secured Creditors' interests.

**B.     The Debtor Proposes the Granting of a Replacement Lien as Additional Adequate Protection.**

26.     Additionally, through this Motion, the Debtor intends to provide adequate protection, to the extent of any diminution in value, to a secured party's collateral for the use of Cash Collateral by providing to such secured party post-petition liens pursuant to 11 U.S.C. § 361(2) in cash and other assets generated by or received by the Debtor from the secured party's Collateral subsequent to the Petition Date, but only to the extent that the secured party had valid, perfected prepetition lien and security interest in such Collateral as of the Petition Date. As of the filing of this Motion, the Debtor is only aware of this provision being applicable to the Secured Lenders. The priority of any post-petition replacement liens granted to the secured party or any other secured creditor shall be the same and in the same priority as existed as of the Petition Date.

**C.     The Debtor's Propose the Granting of a Superpriority Administrative Expense Claim as Additional Adequate Protection.**

27.     Further, the Debtor intends to provide adequate protection, to the extent of any diminution in value, to a secured party's collateral (to the extent that the diminution in value is not caused by the secured party's actions or refusal to allow the Debtor to pay debts necessary to preserve their Collateral) for the use of Cash Collateral by providing to such secured party a superpriority administrative expense claim pursuant to 11 U.S.C. § 507(b) (the "<u>Superpriority Administrative Expense Claim</u>"). The Superpriority Administrative Expense claim will be superior to all other allowed administrative expense claims and unsecured claims. Once again, as of the filing of this Motion, The Debtor is only aware of this provision being applicable to the Secured Lenders.

## LEGAL COSTS AND FEES

28. The Debtor's ability to continue to operate, reorganize and confirm a plan is dependent upon the ability to retain and pay professionals and Subchapter V trustee Fees, including the Debtor's counsel. Therefore, The Debtor seeks a carveout equal to (i) the fees required to be paid to the Clerk and the Subchapter V trustee; and (ii) all accrued and unpaid fees, disbursements, costs and expenses of professionals or professional firms retained by the Debtor and any official committee of creditors.

## THE AUTOMATIC STAY SHOULD BE MODIFIED ON A LIMITED BASIS

29. The relief requested herein contemplates a modification of the automatic stay pursuant to Bankruptcy Code section 362 to (a) permit the Debtor to grant adequate protection liens described above with respect to prepetition, perfected and secured parties, and to perform such acts as may be reasonably requested to assure the perfection and priority of such liens and (b) implement the terms of the Interim Order.

## REQUEST FOR INTERIM AND FINAL RELIEF

30. Bankruptcy Rule 4001(b) provides that a final hearing on a motion for authorization to use cash collateral may not be commenced earlier than fourteen days after the service of such motion. Upon request, however, a bankruptcy court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate. *See* FED. R. BANKR. P. 4001(c)(2). Bankruptcy Rule 6003 further provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may grant certain forms of relief during the twenty-one days immediately following the filing date. FED. R. BANKR. P. 6003.

31. An immediate need exists for the Debtor to obtain approval of the use of the alleged Cash Collateral in order to meet key necessary expenses. Without the immediate use of the alleged Cash Collateral for an interim period, the Debtor will essentially be forced to cease operating and the ice cream will melt placing valuable assets at risk and jeopardizing the ability of the Debtor to reorganize and maximize a return to creditors.

32. The Debtor, therefore, seeks immediate authority to use the alleged Cash Collateral on an interim basis as set forth in this Motion and in the Interim Order to prevent immediate and irreparable harm to their estates pending a Final Hearing to consider entry of the Final Order.

## WAIVER OF BANKRUPTCY RULE 6004(H)

33. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h). As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to operate without interruption and to preserve value for their estates. Accordingly, the Debtor respectfully requests that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

34. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim, lien or interest in or against the Debtor, the Debtor's property or any other third party, a waiver of the Debtor's or any other third party's rights to dispute any claim, lien or interest or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the

validity of any claim or a waiver of the Debtor's or any third party's rights to dispute such claim subsequently.

### REQUEST FOR A FINAL HEARING

35. As noted above, pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtor respectfully requests that the Court set a date for the Final Hearing that is fourteen (14) days following the entry of the Interim Order. The Debtor respectfully requests that it be authorized to serve a copy of the signed Interim Order, which fixes the time and date for the filing of objections, if any, by first-class mail on the (i) the Office of the United States Trustee for the Eastern District of Texas; (ii) each of the Debtor's top 20 list of unsecured creditors; (iii) counsel to the Secured Lenders; (v) the Internal Revenue Service and (vi) to any other party that has filed a request for notices with this Court. The Debtor requests that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001.

### CONCLUSION

WHEREFORE, pursuant to Bankruptcy Rule 4001, the Debtor requests that the Court set a preliminary hearing on the Debtor's proposed use of Cash Collateral, and that at such preliminary hearing, the Court authorize the temporary use of Cash Collateral in order to avoid immediate and irreparable harm to this bankruptcy estate pending a final hearing; the Debtor requests that this Court enter an Interim Order, in substantially the form attached hereto, authorizing the Debtor to use Cash Collateral as described herein, setting the Motion for a final hearing, and granting such other and further relief as the Court may deem just and proper.

**DEBTOR'S EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDER (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL OF EXISTING SECURED LENDER, (II) GRANTING ADEQUATE PROTECTION FOR USE THEREOF, (III) MODIFYING THE AUTOMATIC STAY TO ALLOW FOR THE RELIEF REQUESTED HEREIN AND (IV) SCHEDULING FINAL HEARING--PAGE 12 OF 15**

Case 24-41092   Doc 6   Filed 05/07/24   Entered 05/07/24 10:29:38   Desc Main
Document   Page 13 of 20

<div style="display:flex">

Dated: May 7, 2024.

Respectfully submitted,

*/s/ Brandon J. Tittle*
Brandon J. Tittle
Texas Bar No. 24090436
**TITTLE LAW GROUP, PLLC**
5465 Legacy Drive, Ste. 650
Plano, Texas 75024
Telephone: 972.731.2590
Email: btittle@tittlelawgroup.com

**PROPOSED COUNSEL FOR DEBTOR
AND DEBTOR-IN-POSSESSION**

</div>

**DEBTOR'S EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDER (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL OF EXISTING SECURED LENDER, (II) GRANTING ADEQUATE PROTECTION FOR USE THEREOF, (III) MODIFYING THE AUTOMATIC STAY TO ALLOW FOR THE RELIEF REQUESTED HEREIN AND (IV) SCHEDULING FINAL HEARING--PAGE 13 OF 15**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 7, 2024, a true and correct copy of the foregoing document was served upon the following counsel of record via electronic service and by first class mail to all parties listed on the attached creditor list.

*/s/ Brandon J. Tittle*
Brandon J. Tittle

American Express
200 Vesey Street
New York, NY 10285

April Kusewicz
54627 Amber Dr.
Macomb, MI 48042

Bailee Taylor
119 Woodberry Dr.
Enterprise, AL 36330

Bank of America
100 North Tyron Street
Charlotte, NC 28255

Broma Bakery, LLC
19 Everett Ave. #2
Boston, MA 02125

Cammi Allen
1615 E. 12600 N
Lewiston, UT 84320

Carly Heasley
719 Regester Ave.
Baltimore, MD 21212

Carolina Andes
621 Montglade Ct.
Suwanee, GA 30024

Chelsey Carele LLC
34254 Arizona St.
Union City, CA 94587

Christie Allison
9508 Bell Vernon PL.
Montgomery Village, MD 20886

Claudia Salazar
16 Twinpost
San Antonio, TX 78254

Coastline Creatives, LLC
35 Frying Pan Ln
Stratham, NH 03885

Core Coach
1123 South Boulevard
Lakeland, FL 33803

Dawn Tan
1777 Wewatta St.
Denver, CO 80202

DBA Media LLC
750 N. San Vincente Ste. 950
West Hollywood, CA 90069

Derrick Karsh
531 Carlsbad Dr.
Frisco, TX 75036

Design Darling LLC
168 Tokeneke Road
Darien, CT 06820

Eleanor Rose Home
51 Pratt Street
Halifax, MA 02388

Elizabeth Burton
1850 O Shea Ln
Marietta, GA 30062

Engel & Vlkers Boston
46 Gloucester St.
Boston, MA 02115

Erika Hinston
8959 Holton Rd.
Holton, MI 49425

Estate Five Media LLC
1345 Chemical Street
Dallas, TX 75207

G&B Digital Management, Inc.
5410 Wilshire Boulevard Suite 900
Los Angeles, CA 90036

Geraldine C. Del Vento
4720 SW 89 Place
Miami, FL 33165

HANNNNAHADAMS LLC
870 Horseshoe Meadows Dr.
Waxahachie, TX 75167

Hayley Duerwachter
902 Bluff View Cir. W.
Chippewa Falls, WI 54729

Hillary Muscatello
P.O. Box 865
Chesterfield, MO 63005

Hippy Potter Co.
1501 St. Johns Pl. Apt. 2
Brooklyn, NY 11213

Internal Revenue Service
Centralized Insolvency Operation
P.O. Box 7346
Philadelphia, PA 19101

Jabber Haus
750 N. San Vicente Blvd. Ste.
800 West West Hollywood, CA 90069

Jade Bahng
1105 Seville Pl.
Fullerton, CA 92833

Jennifer Powell, Inc.
2934 1/2 N. Beverly Glen Circle #7
Los Angeles, CA 90077

JM Media, LLC
104 Eller Ct.
Nashville, TN 37221

Kathryn Kay Wesson
29022 Gracies Sky
San Antonio, TX 78260

Kati Nairn
114 James Drive
Beaver, PA 15009

Last Seen Wearing
29609 8th Ave. S.
Federal Way, WA 98003

Lemon Stripes, Inc.
22 Colony Road
Westport, CT 06880

Life by Leanna
28118 Kudzu Drive
Spring, TX 77386

Likekind LLC
18600 Stafford Road
Lake Oswego, OR 97034

Lindsay Anthony LLC
3955 Aragon Dr.
San Diego, CA 92115

Loki BBTN LLC (Illuminate Social)
2658 Griffith Park Blvd.
Los Angeles, CA 90039

Madiha Jamil
4521 San Felipe St.
Unit 1305
Houston, TX 77027

Mary Hendricks
14 Pebble Beach Way
Washington, NJ 07882

Mauna Punukollu
877 N. Marshfield Ave. 2
Chicago, IL 60622

Megan Crean
185 E. 85th St. Apt. 21A
New York, NY 10028

Neon Rose
5158 Bristol Rd.
San Diego, CA 92116

Office of The United States Trustee
Bank of America Building
110 North College Avenue, Room 300
Tyler, Texas 75702

Paige Bennett
3223 Lemmon Avenue
Apt. 3117
Dallas, TX 75204

Parker Talent Management
3437 Cascade Ter.
West Linn, OR 97068

PayPal
2211 North First Street
San Jose, CA 95131

Peblo LLC
169 Madison Ave. 2131
New York, NY 10016

Peyton Johnson
3092 S. Woodrow St.
Arlington, VA 22206

PMG Worldwide
113 N. San Vicente Blvd. Ste. 375
Beverly Hills, CA 90211

Rapid Finance
4500 East West Hwy., 6th Floor
Bethesda, MD 20814

Rebecca and Genevieve Interiors
4814 Proctor Road
Castro Valley, CA 94546

Sandra Downie
55 Highland Ave.
Broad Brook, CT 06016

Shannon Lanier
1333A North Ave.
Wykagyl, NY 10804

Shine Talent Group
1129 N. Poinsettia Pl
Los Angeles, CA 90046

Slowed LLC
2525 Delaware St. Apt. E
Huntington Beach, CA 92648

Socialyte, LLC
150 Alhambra Cir. Ste. 1200
Miami, FL 33134

Spark Talent Group
11843 Rebecca Drive
Frisco, TX 75033

Speakeasy Collective, LLC
45 John St. East
Rutherford, NJ 07073

Steph Taylor Jackson LLC
1024 Lake Woodland Dr.
Little Elm, TX 75068

Stokoe Technologies DBA Mint Arrow
10 Starlight Isle
Ladera Ranch, CA 92694

Style Context LLC
1302 Monte Cristo Ln
Manchester, CT 06042

Sweet Savings and Things, LLC
P.O. Box 217
Mandeville, LA 70470

Tai Tran
16822 NE 39th Court B2006
Redmond, WA 98052

TCH Entertainment
2100 E. Katella Ave. Unit 438
Anaheim, CA 92806

The Kitchen McCabe, LLC
316 W. 9300 S.
Paradise, UT 84328

Trend Management LLC
3040 Post Oak Blvd. Ste. 1800-117
Houston, TX 77056

Valerie Wheatley Garcia
210 Lake Ave.
Liberty, MO 64068

Vanessa Fitzgerald
154 South Anita Ave.
Los Angeles, CA 90049

Wave Collective
11 Elkins St., Ste. 460
Boston, MA 02127

WineDineNashville LLC
1212 Laurel St. Apt. 808
Nashville, TN 37203

## **EXHIBIT A**

**13-week Cash Flow Budget**

LVPR, LLC

| Week # | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 13WK |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending | 5/10/2024 | 5/17/2024 | 5/24/2024 | 5/31/2024 | 6/7/2024 | 6/14/2024 | 6/21/2024 | 6/28/2024 | 7/5/2024 | 7/12/2024 | 7/19/2024 | 7/26/2024 | 8/2/2024 | Total |
| Beginning Cash | 6,417 | 32,437 | 1,516 | (8,971) | (12,833) | 17,211 | (4,038) | (15,609) | (23,459) | 20,976 | 17,326 | (3,919) | (12,169) | #NAME? |
| **SOURCES** | | | | | | | | | | | | | | |
| Revenue | 34,000 | - | - | 6,000 | 69,000 | - | - | 6,400 | 69,000 | - | - | - | - | 184,400 |
| Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Sources** | 34,000 | - | - | 6,000 | 69,000 | - | - | 6,400 | 69,000 | - | - | - | - | 184,400 |
| **USES** | | | | | | | | | | | | | | |
| W-2 Workers | - | 6,000 | - | - | - | - | - | 6,000 | - | - | - | - | 6,000 | 18,000 |
| 1099 Workers | - | 21,475 | 5,625 | 5,000 | 34,165 | 17,899 | 5,000 | 5,000 | 19,699 | - | 17,899 | 5,000 | 13,900 | 150,662 |
| Industrious - rent | - | - | - | - | 900 | - | - | - | 900 | - | - | - | - | 1,800 |
| Google | - | - | - | - | 215 | - | - | - | 215 | - | - | - | - | |
| Hartford - Insurance | - | - | - | - | 254 | - | - | - | 254 | - | - | - | - | |
| Slack | - | 100 | - | - | 100 | - | - | - | - | 100 | - | - | - | |
| Canva | - | - | - | - | 15 | - | - | - | 15 | - | - | - | - | |
| LinkedIn | - | - | - | - | 32 | - | - | - | 32 | - | - | - | - | |
| Quickbooks | - | 96 | - | - | - | - | 96 | - | - | - | 96 | - | - | 25 |
| GoDaddy | - | - | - | - | 25 | - | - | - | - | - | - | - | - | 6,449 |
| Muckrack | - | - | 1,612 | 1,612 | - | - | 3,225 | - | - | - | - | - | - | 200 |
| Reimbursments | - | - | - | - | - | 100 | - | - | - | 100 | - | - | - | 400 |
| Other Expenses | - | - | - | - | - | - | - | - | 200 | 200 | - | - | - | 4,730 |
| Misc. | 4,730 | - | - | - | - | - | - | - | - | - | - | - | - | |
| **Total Operating Expenses** | 4,730 | 27,671 | 7,237 | 6,612 | 35,706 | 17,999 | 8,321 | 11,000 | 21,315 | 400 | 17,995 | 5,000 | 19,900 | 182,266 |
| **Cash Flow from Operations** | 29,270 | (27,671) | (7,237) | (612) | 33,294 | (17,999) | (8,321) | (4,600) | 47,685 | (400) | (17,995) | (5,000) | (19,900) | 2,134 |
| **Professional & Bankruptcy Fees** | | | | | | | | | | | | | | |
| Other- Attorney/FA | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 39,000 |
| Subchapter V Trustee | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,250 |
| Potential Adequate Protection | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Critical Vendor True Ups | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Professional & Bankruptcy Fees** | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 42,250 |
| **Net Cash Flow** | 26,020 | (30,921) | (10,487) | (3,862) | 30,044 | (21,249) | (11,571) | (7,850) | 44,435 | (3,650) | (21,245) | (8,250) | (23,150) | (40,116) |
| **Ending Cash** | 32,437 | 1,516 | (8,971) | (12,833) | 17,211 | (4,038) | (15,609) | (23,459) | 20,976 | 17,326 | (3,919) | (12,169) | (35,319) | |